Helen Ruth VAUGHN, Plaintiff-Appellee,

v.

NATIONAL TEA COMPANY, Defendant-Appellant.

No. 14294.

United States Court of Appeals
Seventh Circuit.

Jan. 30, 1964.

Rehearing Denied March 19, 1964.

George V. Burbach, Owen W. Crumpacker, and Crumpacker, Burbach & Abrahamson, Hammond, Ind., for appellant.

Daniel C. Kuzman, Fred M. Stults, Jr., Gary, Ind., Stults, Custer & Kuzman, Gary, Ind., of counsel, for appellee.

Before HASTINGS, Chief Judge, and DUFFY and KNOCH, Circuit Judges.

DUFFY, Circuit Judge.

This diversity suit was brought to recover damages for injuries sustained by plaintiff when she slipped and fell in defendant's store located in East Gary, Indiana. The store was of the self-service supermarket variety. The case was tried to a jury which found for the plaintiff and awarded damages in the sum of $25,000.

On May 25, 1959, plaintiff entered defendant's store to make certain purchases. She used a shopping cart. After shopping in several aisles, she went to the produce aisle which is the easternmost

aisle in the store. She entered this aisle from the north or rear end of the store.

The vegetables and fruit were displayed in bins along each side of the produce aisle, some wrapped and some unwrapped. There were two hoses used to sprinkle the non-wrapped vegetables including leaf lettuce. The sprinkling was done to keep certain vegetables crisp. The store was scheduled to open at 9. a. m., prior to which time any foreign material was cleaned from the produce. Thereafter, produce was brought from the back room and placed in the bins. The aisles usually were swept and cleaned up between 9 and 9:30 a. m. each day. Two swinging doors separate the stockroom and the produce aisle. Each of these doors had a glass window. These doors usually were kept open in order that the produce clerk could more readily observe the produce aisle. The floor was constructed of tile.

For a year or two prior to May 25, 1959, Bessie Pappas had been defendant's produce clerk. The testimony showed it was normal for bits of produce to fall on the floor in the produce aisle. Bessie Pappas was responsible for keeping the produce aisle clean. On the day in question, Bessie had been on duty from two to seven hours before the time of the plaintiff's fall. Bessie did not remember sweeping, cleaning, mopping or picking up anything from the produce aisle on the day prior to the time plaintiff slipped and fell.

Plaintiff left her cart at the north end of the aisle, walked over to where the tomatoes were displayed, selected some, turned around, walked to the center of the aisle and then slipped and fell landing on her right side.

After falling, and while still on the tile floor, plaintiff noticed a piece of lettuce about two to three inches in diameter near her right foot. Adjacent to the lettuce was a skidmark consisting of a black-greenish stain on the floor being about two inches wide and variously described as from twelve to twenty-four inches long. The piece of lettuce was at one end of the skidmark. Plaintiff had a greenish-black stain on the sole and side of her right shoe, on her right stocking and on the hem of her dress. The piece of lettuce, after plaintiff had stepped and slipped on it, was described variously by witnesses as decayed, black piece of lettuce, partially mashed, discolored, dark greenish color, wet, slimy, spotty, blackish-greenish, rotten.

Although Bessie Pappas denied it, both plaintiff and Mr. and Mrs. Leigh saw her pick up the piece of lettuce from the floor after plaintiff fell, and deposit it in a trash container.

Plaintiff suffered pain in her neck, shoulder and arm. A cervical laminectomy for the removal of a ruptured disc was performed. In the opinion of the doctors who testified, this condition probably resulted from the plaintiff's fall.

Defendant filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court denied this motion.

On this appeal, defendant's principal contention is that the record contains no evidence of any negligence on the part of the defendant. It is strongly argued that there was no evidence that defendant breached a duty to plaintiff by not discovering or removing the piece of lettuce from the floor of its store.

Whether a mashed, slimy piece of lettuce on a tile floor in a supermarket creates a dangerous condition so as to give rise to a duty on the part of the storekeeper to discover and remove it, is, in our opinion, a question for the jury.

Defendant relies heavily on J. C. Penney, Inc. v. Kellermeyer, 107 Ind.App. 253, 19 N.E.2d 882, Reh. den. 22 N.E.2d 899. However, we think that case is distinguishable. The item causing the plaintiff to fall in Kellermeyer was a piece of wood, cardboard or cellophane. The Court there said, 19 N.E.2d at page 886: "As distinguished from the fruit store case, supra, there is no evidence in the instant case to the effect that the object on the floor was any part of, or in any way connected with, the merchandise being sold in the store * * *."

While there is no evidence in the instant case that defendant had actual notice, it is our view that the defendant had constructive notice. Such notice is not solely dependent upon lapse of time but on the special circumstances prevailing in each case. The condition of the lettuce leaf immediately after it had been stepped upon is of probative value in determining the length of time it had been on the floor. Great Atlantic & Pacific Tea Co. v. Popkins, 260 Ala. 97, 69 So.2d 274, 276; Gallagher v. Stop and Shop, Inc., 332 Mass. 560, 126 N.E.2d 190, 192; Goldsmith v. Mills, 130 Cal.App.2d 493, 279 P.2d 51, 52.

In the instant case, the condition of the lettuce leaf showed that others must have stepped on it. The jury also knew that the traffic in the produce aisle at the time plaintiff fell, was light. In a comparable situation, the Court in Great Atlantic & Pacific Tea Co. v. Popkins, supra, stated at 69 So.2d 276: "The lettuce leaf was shown to have been dirty, crumpled and mashed. The jury could find from that condition that it had been on the floor long enough to have raised a duty on defendant to discover and remove it."

■ Defendant urges error in the admission of photographs taken inside of the store at a date subsequent to the time when plaintiff fell. Admittedly, the exhibits were fair representations of the floor in the produce aisle, the location of the bins, of the swinging doors and of the trash can into which the clerk threw the piece of lettuce. However, defendant claims that some foreign material appears on the floor.

Plaintiff argues that an adverse party is in no position to go into a supermarket type of store and demand the floors be cleaned so the adverse party may procure a photograph.

Be that as it may, the trial court was careful to admonish the jury,—"Ladies and Gentlemen of the jury, please understand that this photograph is introduced solely for the purpose of showing the general lay-out of the store, the position of the counters, the nature of the floor, and you are to disregard any substance or objects that might appear on the floor in this picture, because this photograph was not taken at the time and it does not reflect the exact condition of the floor as to cleanliness or otherwise as it was at the time the accident occurred, because the photograph was taken at a subsequent date."

When the photographs marked as exhibits were received in evidence, the Court told the jury that they would be received with the same understanding of showing the lay-out of the store and not for the purpose of showing the exact condition of the floor as it was on the date of the accident.

In view of the cautionary instructions by the Court and the plaintiff's announced purpose in offering the exhibits, we hold there was no abuse of discretion in receiving the photographs into evidence. Drohan v. Standard Oil Company, 7 Cir., 168 F.2d 761; Haven v. Snyder, 93 Ind. App. 54, 176 N.E. 149.

■ One of plaintiff's counsel who, at the time of the trial was somewhat inexperienced in trial work, said in the argument to the jury, "The case would not have gotten this far if the court didn't think there was sufficient evidence. * * *" A defense objection was sustained. The Court instructed the jury to disregard the counsel's remarks, and ordered them stricken. Counsel promptly apologized. Under the circumstances, we think the inadvertent remark was no more than harmless error.

■ Defendant objects to certain opinion evidence given by two doctors. While objection was made to questions asking the doctors if they had an opinion, no objection was made to the question asking what such opinion was. We find no prejudicial error.

Defendant urges error because of certain instructions given to the jury. We have examined same and find no error.

Judgment

Affirmed.