TRUE TEMPER CORP., ROBERT CULLISON, JR. *v.* ROBERT E. MOORE, MARTHA C. MOORE.

[No. 2-473A86. Filed July 31, 1973.]

*Richard L. Fairchild, Stewart, Irwin, Gillion, Fuller & Meyer,* of Indianapolis, for appellants.

*James T. Robison, Robison, Robison & Miller,* of Frankfort, for appellees.

SHARP, J.—The Appellees, Robert E. Moore and Martha C. Moore, filed a complaint in two counts in which the Appellants, True Temper Corp. and Robert Cullison, Jr., as well as William Petty were designated as defendants. It alleged that Appellees owned real estate in Clinton County, Indiana on which was located a woods, including some ash trees and that Appellant Cullison, at the instance and request of True Temper Corp., wrongfully and without leave, license or con-

sent trespassed and entered upon said real estate of Appellees and indiscriminately destroyed timber, removed standing ash trees and damaged said woods through the use of a "crawler" type vehicle on November 22, 1971. Appellees also alleged that prior to November 22, 1971, Petty and True Temper Corp. collaborated and planned for the unauthorized removal of valuable timber from Appellees' property and during August and September of 1971, Petty and agents of True Temper Corp. entered Appellees' real estate without permission and marked certain trees. In Count I Appellees pray for actual damages of $10,000.00. In Count II Appellees specifically alleged that the acts of the defendants were done maliciously, deliberately with wicked intentions and a request for $25,000.00 in punitive damages is stated. The answer of the Appellants admitted the existence of the woods and otherwise denied the allegations of Appellees' complaint.

Appellants, True Temper Corp. and Cullison, also filed a cross-claim against Petty which sought indemnity from Petty based on written contract.

On October 31, 1972, trial was held before the trial court without the intervention of a jury. At the close of the evidence submitted by Plaintiffs-Appellees the trial court sustained a motion to dismiss as to Cullison but overruled same as to True Temper Corp. In this trial Petty was present throughout although he made no defense, filed no pleadings, had no counsel and offered no relevant testimony. At the close of all the evidence True Temper Corp. renewed its motion to dismiss which was again overruled. The trial court entered the following Findings and Judgment:

"The Court having examined the evidence and the law applicable thereto now finds for the plaintiffs, Robert E. Moore and Martha C. Moore and against the defendants jointly and severally, True Temper Corporation, William Petty and Robert Cullison, Jr. upon pleading paragraph I of the within complaint.

The Court further finds that the damages suffered by the plaintiffs herein total $1,245.00 plus interest at 6% from November 22, 1971 to date.

The Court having examined the evidence and the law applicable thereto now finds that the acts of trespass by the defendants, True Temper Corporation and their agent Robert Cullison Jr. as joined in by William Petty, defendant, were malicious in their wanton and willful disregard for the security of the plaintiffs and their property rights in 40 acres of valuable standing timber described in pleading paragraph II of the within complaint, and that for such calicious [sic], willful and wanton conduct plaintiffs are entitled to exemplory [sic] and punitive damages in the sum of $3,735.00, together with costs herein from and against said defendants True Temper Corporation and William Petty.

But the Court further finds that the defendant, William Petty, is insulated from judgment for punitive damages in favor of the plaintiffs by the criminal laws of the State of Indiana and penalties thereunder, but that the said William Petty under the alleged contract of transfer and conveyance of portions of the above mentioned standing timber did agree to warrant and defend True Temper Corporation against all lawful claims and demands whatsoever.

The Court finds for True Temper Corporation upon its cross claim in both pleading paragraphs thereof, to-wit: Paragraph 1, the sum of $3,735.00 together with costs herein and attorney fees in the sum of $400.00;

Paragraph 2, the sum of $1,313.48 together with costs herein.

Further the Court finds against plaintiffs prayer for attorneys fees as against the defendant herein.

Upon the above finding the court will enter a judgment consistant [sic] therewith.

It is now, therefore, ordered and adjudged that Plaintiffs Robert E. Moore and Martha C. Moore have judgment jointly and severally against Defendants True Temper Corporation C.T. Corporation Systems at 1511 Merchants Bank Building, Indianapolis, Indiana, William Petty at 1826 Walnut, Anderson, Indiana, and Robert Cullison, Jr. at Rural Route, Charlottesville, Indiana, in the sum of $1313.48 together with costs herein.

It is further ordered and adjudged that Plaintiffs Robert E. Moore and Martha C. Moore have judgment against Defend-

ant True Temper Corporation C. T. Corporation Systems in the sum of $3,735.00 together with costs herein.

It is further ordered and adjudged that Defendant and Cross-Claimant True Temper Corporation C. T. Corporation Systems have judgment against Cross-Defendant William Petty in the sum of $5,048.48 and judgment for attorney fees herein of $400.00 together with costs assessed herein and paid by said True Temper Corporation.

It is further ordered and adjudged that Plaintiff take nothing additional from Defendants upon their claim for attorneys fees."

On this appeal error is asserted on three interrelated points asserted in Appellants' Motion to Correct Errors:

"2. The decision of the Court is contrary to law in that the Court erred in overruling True Temper's Motion to Dismiss Count II of plaintiffs' Complaint at the close of all of the evidence.

3. The Court's decision finding in favor of plaintiffs and against the defendant, True Temper Corp., on Count II of plaintiffs Complaint is not supported by sufficient evidence upon all necessary elements of Count II.

4. The Court's finding that the acts of trespass of Robert Cullison, Jr. were malicious is not supported by sufficient evidence and is contrary to law in that at the close of plaintiffs' evidence, the Court sustained the Motion of Robert Cullison, Jr. to dismiss Count II of plaintiffs' Complaint against him."

Two other errors asserted by the Appellants' Motion to Correct Errors have been expressly waived here by the Appellants in their brief.

The issue thus presented for our consideration boils down to the sufficiency of the evidence to support the judgment of $3735.00 for punitive damages.

This court has recently reexamined and reconsidered the concept of punitive damages. In *Jones* v. *Hernandez* (1970), 148 Ind. App. 17, 263 N.E.2d 759, this court held that punitive damages are proper when the acts of the wrongdoer are such as to indicate *a heedless disregard of the consequences*. In *Alderman Ford Sales* v.

*Bailey* (1972), 154 Ind. App. 632, 291 N.E.2d 92, Judge Sullivan, speaking for District Two of this Court, said:

> "Punitive or exemplary damages do not rest upon any ground of abstract or theoretical justice, but upon the basis of an established public policy which seeks to promote the public safety and to punish through the medium of a civil proceeding a fraudulent wrongdoer, and where malice, gross fraud and oppressive conduct is shown punitive damages are allowable to deter other wrongdoers from offending in a like manner." See also, *Physicians Mutual Ins. Co.* v. *Savage* (1973), 156 Ind. App. 283, 296 N.E.2d 165; *Moore* v. *Waitt* (1973), 157 Ind. App. 1, 298 N.E.2d 456; *Capitol Dodge, Inc.* v. *Haley* (1972), 154 Ind. App. 1, 288 N.E.2d 766; and *Bob Anderson Pontiac, Inc.* v. *Davison* (1973), 155 Ind. App. 395, 293 N.E.2d 232.

In examining the factual record to determine whether there is sufficient evidence to warrant the award of punitive damages, it goes without saying that we must and will examine it in the light most favorable to the decision of the trial court. In this context Appellee is entitled to such favorable inferences from all the evidence produced no matter from what source. *State of Indiana* v. *Tolliver* (1965), 246 Ind. 319, 205 N.E.2d 672. It is not our proper function to weigh the evidence or determine questions of credibility. In this regard it would appear the trial court in this case did, indeed, have to determine questions of credibility which were very closely allied with the question of intent. Since the trial court saw and heard the witnesses it was in a position to judge such intent and motive.

The motives and intent of two persons are worthy of note. Some time before the cutting of the Appellees' timber on November 22, 1971, there was a meeting in a cafe between a Mr. Ezri, a timber buyer for True Temper Corp., and Cullison. Prior dealing between Ezri and Petty were on the basis of Ezri buying cut logs from Petty. This was the first time Ezri had purchased standing timber from Petty. It was the testimony of Ezri that one usually buys standing timber

from the landowner. Ezri knew that Petty didn't own the land on which the ash trees in question were located. At the meeting Ezri had a printed form contract used in the purchase of standing timber. Ezri thought it necessary to and did read the contract to Petty. Although Appellee, Moore, was designated in said purported form contract as the owner and the provisions of the same call for proof of ownership, Ezri required no such proof. In addition to this failure to require proof of ownership in even a limited way, Ezri paid Petty in full in June 1971, before the timber was actually cut in November 1971. This was done even though the printed contract form provided for payment to the seller at the time of taking. All this time Cullison testified that as one with experience in such transactions he "had a feeling" something was wrong. Ezri was also experienced in these transactions and was exposed to the same circumstances as Cullison. This "feeling" of Cullison seems to be further based on the fact that there was no bargaining between Ezri and Petty concerning the board feet marked and the price to be paid. Petty was in a hurry. Ezri sensed Petty's desire to hurry the deal and paid in full at the time of signing the form contract during the initial trespass. Even as an experienced timber buyer Ezri exhibited no curiosity about a number of apparent circumstances: How did Petty get an interest in Moores' timber? Did Petty buy the whole woods? Who is buying the other timber in this woods? If the timber is sold at the going price, how does Petty make a profit? Between their first meeting in the cafe and the time of cutting Petty failed to respond to inquiries from Ezri by both telephone and letter. Mr. Ezri did not search the public records in regard to ownership although he testified that it was the better practice to do so and he did so in about 15% of his transactions.

After the Appellees discovered the cutting on November 22, 1971, Ezri went to the Court House and examined the records,

he saw the lady from whom Appellees purchased this real estate, he contacted Petty again both on the phone and in person. But Ezri never contacted the Appellees.

Based on Ezri's background knowledge and experience in purchasing standing timber, the trial court was justified in finding that his conduct amounted to a heedless disregard for the rights of Appellees within the meaning of the *Hernandez-Alderman-Savage* cases. Since Ezri's agency relationship with True Temper Corp. is undisputed under the issue set forth in the Appellants' Motion to Correct Errors none of those asserted issues are the basis for reversing this case. Therefore the decision of the trial court is hereby affirmed.

Judgment affirmed.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported at 299 N.E.2d 844.